474

(No. 56861.—

*In re* MARRIAGE OF BARBARA J. DAVIES, Appellee, and JOHN A. DAVIES (William E. Jegen, Adm'r, Appellant).

*Opinion filed. April 22, 1983.*

William E. Jegen, Peter R. Vogel, and Kurt A. Carlson, of Jegen & Carlson, of Glen Ellyn, for appellant.

Seymour C. Axelrood and Paul Ben Axelrood, of Sewell, Axelrood & Moran, of Chicago (David A. Novoselsky, of counsel), for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

John A. Davies was the defendant in a contested marriage-dissolution action filed by plaintiff, Barbara J. Davies, in the circuit court of Du Page County. The trial court, electing to proceed in the bifurcated manner seemingly permitted under section 401(3) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 401(3)), entered a judgment dissolving the marriage and expressly providing that marital-property rights and related matters would be resolved after a separate hearing. Defendant died prior to entry of judgment on the property and related questions, and the trial judge subsequently entered a supplemental judgment order concerning property and maintenance rights. Plaintiff appealed, both judgments were reversed by the appellate court (105 Ill. App. 3d 661), and we granted the petition for leave to appeal filed by the administrator of defendant's estate.

The facts of this case are relatively simple. Plaintiff filed an amended petition for dissolution of marriage on April 30, 1979, and, following a hearing, the trial judge entered a judgment of dissolution on October 9. That judgment order did not purport to deal with marital-property rights or related rights, but instead provided that such rights would be the subject of further proceed-

ings. The major dispute concerning marital property centered on the distribution of the shares of the John Davies Corporation, which the parties held as joint tenants, and the division of vested pension rights acquired by plaintiff from her former employment and held to be marital property. The parties were the sole shareholders of the stock of the John Davies Corporation. After conducting a hearing, the trial court issued an opinion letter to the attorneys for both parties which provided that all marital property should be equally divided. Although that letter was dated on March 28, 1980, it was not filed of record until April 9. In his letter, the trial judge also directed plaintiff's attorney to prepare a judgment order conforming with the terms of his letter and to present the order for entry on or after April 7.

Before that order was entered, however, defendant's attorney suggested of record the death of defendant which occurred on April 8. After considering briefs submitted by the parties which addressed the effect upon the pending action of defendant's death, the trial judge issued another letter to the attorneys on October 21, which indicated that defendant's death would not have any impact on the status of the proceedings. On February 19, 1981, the trial judge entered a supplemental judgment order *nunc pro tunc* as of March 28, 1980, which determined the rights of the parties in accordance with the terms of his opinion letter of that date.

After unsuccessfully petitioning the trial court to set aside all of the dissolution-of-marriage proceedings, plaintiff prevailed in the appellate court, which reversed both the dissolution judgment and the supplemental judgment. (105 Ill. App. 3d 661.) The appellate court held that section 401(3) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 401(3)), which was amended in 1981 to retrospectively impart validity to all dissolution judgments en-

tered in bifurcated proceedings, could not constitutionally be retrospectively applied. Accordingly, resting on one of its own recent decisions (*In re Marriage of Cohn* (1981), 94 Ill. App. 3d 732) that dissolution judgments entered as a part of bifurcated proceedings were not final in nature, and a determination that the *nunc pro tunc* order was ineffective because the trial judge's opinion letter did not constitute a judgment, the appellate court concluded that the cause had abated when respondent died.

There are in this case two questions requiring our consideration: Is plaintiff, having acquiesced in the bifurcated proceeding, now free to assert its invalidity? If not, did defendant's death prior to the entry of final judgment cause the proceedings to abate?

Plaintiff, asserting, as the appellate court held, that the judgment of dissolution entered in her favor was improperly rendered, urges this court to declare that judgment and all of the subsequent proceedings void. The appellate court's conclusion that amended section 401(3) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 401(3)) could not constitutionally be applied to validate the judgment was confirmed by our recent decision in *In re Marriage of Cohn* (1982), 93 Ill. 2d 190. Nevertheless, we find it unnecessary to examine the propriety of the judgment, which was entered at plaintiff's behest. Our opinion in *Cohn* made entirely clear the possibility that any error in bifurcating dissolution proceedings could be waived. Throughout most of the trial court proceedings in this case, plaintiff acquiesced in the dissolution judgment, failing to challenge its validity even when asked to present a brief evaluating the status of the action following defendant's death; indeed, plaintiff did not question the validity of the dissolution judgment until after the trial court had entered its supplemental and final judg-

ment disposing of the property questions and purporting to end the proceedings. As this court has previously noted, "[p]arties cannot blow hot and cold in a lawsuit." (*Henry v. Metz* (1942), 382 Ill. 297, 306.) By waiting to object to bifurcation until she learned the court's decision on the property issues, plaintiff has, in effect, invited any error which might inhere in the dissolution judgment and cannot now be heard to complain of it. See *Catalano v. Pechous* (1980), 83 Ill. 2d 146, *cert. denied* (1981), 451 U.S. 911, 68 L. Ed. 2d 300, 101 S. Ct. 1981; *Thomas v. Kaiser Agricultural Chemicals* (1980), 81 Ill. 2d 206; *Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570; *People v. Van De Rostyne* (1976), 63 Ill. 2d 364.

Generally, the death of a party during the course of divorce proceedings has been held to abate the action. (*Tuttle v. Gunderson* (1930), 341 Ill. 36; *Bushnell v. Cooper* (1919), 289 Ill. 260; *In re Estate of Chandler* (1980), 90 Ill. App. 3d 674.) This court has recognized, however, that there is no abatement upon the prejudgment death of a party to a nonsurviving action if the litigation is ripe for judgment. (*Tunnell v. Edwardsville Intelligencer, Inc.* (1969), 43 Ill. 2d 239, *cert. denied* (1970), 397 U.S. 1021, 25 L. Ed. 2d 530, 90 S. Ct. 1259.) Although the party's death in *Tunnell* occurred after the entry of final judgment and while an appeal was pending, the court expressly denied that the entry of final judgment was the key factor in determining that the nonsurviving action had not abated. Instead, the opinion states that "[w]hat is significant in such cases, in our opinion, is not any metaphysical notion of merger of the cause of action into the verdict, but rather the circumstance that all factual questions had been resolved before [the party] died." (43 Ill. 2d 239, 243.) In *Tunnell*, this court noted that a case becomes ripe for judgment following the return of a verdict. (43 Ill. 2d 239, 242.)

Other State courts have also held that proceedings are ripe for judgment and will not abate following a verdict. See, *e.g., Moore v. Moore* (1972), 229 Ga. 600, 193 S.E.2d 608; *Bates v. Burns* (1954), 2 Utah 2d 362, 274 P.2d 569; *Garrett v. Byerly* (1930), 155 Wash. 351, 284 P. 343, *overruled on other grounds in Martin v. Hadenfeldt* (1930), 157 Wash. 563, 289 P. 533; *Variety Children's Hospital, Inc. v. Perkins* (Fla. App. 1980), 382 So. 2d 331; *Parker v. Parker* (1974), 128 N.J. Super. 230, 319 A.2d 750.

During oral argument, plaintiff's attorney suggested that the trial court's opinion letter deserved less respect than a verdict returned by a jury. It seems to us, however, that the opinion letter, although not amounting to a judgment, is entitled to greater weight than a jury verdict. While a verdict is ordinarily final so far as the jury which rendered it is concerned, it may still be modified by the judge through remittiturs or additurs or even set aside, and a new trial ordered; or it may be rendered completely meaningless by the trial judge who enters judgment *non obstante veredicto* (Ill. Rev. Stat. 1979, ch. 110, par. 68.1). An opinion letter from the judge to counsel, however, is significantly less vulnerable to change. Although not the equivalent of a judgment, which is the officially recorded and publicly announced expression of a court's decision (*People ex rel. Schwartz v. Fagerholm* (1959), 17 Ill. 2d 131, 134-35; *In re Estate of Young* (1953), 414 Ill. 525, 533), an opinion letter approaches that status more nearly than does a jury verdict. The opinion letter represents the judge's considered decision; it is his expression of his judgment as to the manner in which the contested issues should be resolved. The recorded judgment will normally differ only in its more formal appearance and content. It is, of course, conceivable that the judge might reconsider and alter his opinion either before or after his decision as expressed in the

opinion letter is formally recorded in final judgment form. But where, as in this case, that opinion is presumably the result of the judge's thorough consideration of the evidence, the law and the briefs of the parties, the likelihood of prejudgment or post-judgment changes is quite remote—substantially more remote, we believe, than the possibility of a judge's modification of a jury verdict, the propriety of which the judge has had no opportunity to consider prior to its rendition. Accordingly, if as we indicated in *Tunnell,* a jury verdict is a sufficiently final resolution of the factual questions to preclude abatement of the action upon the death of a party, a judge's opinion letter must be given the same effect. Consequently, we consider the litigation in this cause to have been ripe for judgment, and that the appellate court erred when it held that the action had abated.

Accordingly, the judgment of the appellate court is reversed and the judgment of the circuit court of Du Page County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE SIMON, specially concurring:

While I have no quarrel with the colorful proposition that parties " 'cannot blow hot and cold in a lawsuit' " (95 Ill. 2d at 478), I find it to be neither here nor there in this lawsuit. I believe that the result reached by the majority is correct, but that there is a less circuitous route to it than that taken by the majority.

The majority (and, unfortunately, Mrs. Davies as well) mistakenly assumes that an action to distribute marital property subsequent to a dissolution of marriage abates when one of the spouses dies. This assumption is drawn from cases which hold that actions for dissolution of marriage abate upon the death of one spouse. Whether phrased in terms of mootness (*Tuttle v. Gunderson* (1930), 341 Ill. 36) or abatement (*Bushnell v. Cooper*

(1919), 289 Ill. 260; *Milenkovic v. Milenkovic* (1981), 93 Ill. App. 3d 204; *In re Estate of Chandler* (1980), 90 Ill. App. 3d 674), the rationale of these cases is that the death of one of the parties to a marriage extinguishes the subject matter of a dissolution action and removes all cause for complaint: the death of a spouse "settle[s] the question of separation beyond all controversy" (*Bushnell v. Cooper* (1919), 289 Ill. 260, 264; *Milenkovic v. Milenkovic* (1981), 93 Ill. App. 3d 204, 210). This rationale does not apply to property settlements in the case of a bifurcated dissolution such as the one at bar, where a judgment of dissolution is entered by the court before the death occurs and all that remains to be done at the time of the death is to distribute the marital property. The subject matter of the action for distribution of the property is the property, not the parties to the marital relationship, and there remain two adverse claimants to the property, the surviving spouse and the estate of the deceased spouse. The death extinguishes nothing; it merely substitutes one adverse party (the estate) for another (the decedent). The property continues to exist, while the controversy concerning its ownership continues. The controversy concerning the marital property in this case was a live one between two interested parties and should have been ruled on in a formal manner accordingly.

Rather than approaching the case in this way, the majority chooses to treat the trial court's opinion letter regarding division of the property as a final judgment, thereby accomplishing what it no doubt sees as justice to the parties. This, in my opinion, is needlessly elaborate, and it involves the court in awkward comparisons and in speculation of a kind in which it would not normally engage. The majority asserts that "where, as in this case, [the opinion letter] is presumably the result of the judge's thorough consideration of the evidence, the law

and the briefs of the parties, the likelihood of prejudgment or post-judgment changes is quite remote—substantially more remote, we believe, than the possibility of a judge's modification of a jury verdict, the propriety of which the judge has had no opportunity to consider prior to its rendition." (95 Ill. 2d at 480.) This sweeping statement carries conviction only if we believe that juries ordinarily do not give the same thorough consideration to the evidence and the law that judges do, and only if there is evidence in the instant case to indicate that the trial judge either intended his opinion letter to be a final determination of the rights of the parties or was not accustomed to changing his mind, even on the basis of new evidence. Either assumption by this court would be unfounded and unseemly. Juries are the triers of all issues of fact in cases in which they are empaneled, and they act on the basis of detailed instructions by the trial judge as to questions of law. They are expected to consider all of the evidence and all of the legal instructions, and I see no reason to believe that they do not live up to that expectation in the vast majority of cases. Similarly, I believe that it sells the trial judge in this case short to assume that he would not change his mind no matter what happened. I see no evidence to support such speculation, and I believe that, in the absence of evidence which clearly indicates that a judge intends an opinion letter to the parties to reflect his final judgment, justice is best served by presuming such a letter to be intended merely as a temporary resolution subject to modification until it is formally entered and recorded as the court's decision. *People ex rel. Schwartz v. Fagerholm* (1959), 17 Ill. 2d 131; *Commonwealth Loan Co. v. Baker* (1966), 67 Ill. App. 2d 359; see *Berzana v. Mezyk* (1980), 86 Ill. App. 3d 824.

While I agree with the result the court reaches in this case, I am disturbed not only by the logic the court has

used in reaching that result but also by the emphasis that is placed on the existence of the opinion letter. What if by chance there had been no opinion letter, perhaps because the trial judge had decided to issue a definitive rather than a temporary ruling and to give it the extended consideration he felt such a resolution would require? Would the property-settlement action have abated had Mr. Davies died before the judge issued his final judgment, leaving Mrs. Davies without recourse against either the marital assets or the estate as a result of the trial court's earlier order declaring her to be no longer the wife of Mr. Davies? The answer that is implied by the majority opinion is "yes." As I have pointed out, however, there is nothing in the law which commands such an unfair and illogical result, and I can conceive of no reason to assume without some discussion or analysis that the legislature, in enacting section 401(3) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 401(3)), intended or even contemplated that such a risk would attend a bifurcated dissolution. I would hold in this case that the property-settlement action did not abate, but would omit all reference to the opinion letter, for I think such reference is both unnecessary and misleading.